**Violet LUMOA, Plaintiff,**

v.

**John E. POTTER, Postmaster General, United States Postal Service, Defendant.**

**No. 1:03 CV 783.**

United States District Court, M.D. North Carolina.

Dec. 29, 2004.

Romallus O. Murphy, Greensboro, NC, for Plaintiff.

Gill P. Beck, Office of U. S. Attorney, Greensboro, NC, James E. Campion, Jr., U.S.P.C. Law Department Philadelphia Field Office, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION

OSTEEN, District Judge.

Plaintiff Violet Lumoa ("Lumoa")[1] brings this action against her employer, John E. Potter, Postmaster General, United States Postal Service (the "Postal Service"), alleging that a personal injury she suffered on the job was caused by sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The matter is before the court on the Postal Service's Motion for Summary Judgment and its Motion to Strike some of the attachments to Plaintiff's Response to Defendant's Summary Judgment Motion. For the reasons set forth below, both motions will be granted.

---

1. Plaintiff's last name is spelled "Lumoa" in the complaint caption, but is spelled "Luoma" in various evidentiary documents and in several filings. Plaintiff's signature on the EEO Investigative affidavit is spelled "Luoma."

## I. FACTUAL BACKGROUND

The Postal Service moves to strike several documents Plaintiff has submitted as evidence in this summary judgment proceeding. Before the court can summarize the facts in this case, it must consider the Postal Service's Motion to Strike and determine the scope of the evidentiary record.

### A. Motion to Strike

The Postal Service moves to strike Plaintiff's Submissions A, C, and D, and portions of Plaintiff's Submission B, which were included with Plaintiff's Response to Defendant's Summary Judgment Motion. First, the Postal Service argues that they are unauthenticated under Rule 901 of the Federal Rules of Evidence ("Rule 901 "). Second, the Postal Service argues these submissions do not meet the requirements of Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). Specifically, it argues that Submission A, a discovery response signed by Plaintiff's attorney, is not an evidentiary document. Next, the statements contained in Submission B, made by Robin M. Moore, Adrienne Maddox, Annettia Wattlington, and Brenda Cotten, are not in the proper form of an affidavit, include hearsay, and are irrelevant. It argues that Submission C is not based on personal knowledge, includes hearsay, and is not in the proper form. Finally, the Postal Service argues Submission D is not based on Plaintiff's personal knowledge. Plaintiff responds that the documents are self-authenticating under Rule 902(8) of the Federal Rules of Evidence and are otherwise admissible.

Rule 56(c) of the Federal Rules of Civil Procedure ("Rule 56(c)") provides that to survive summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," must show a dis-puted factual issue exists in the case. Fed.R.Civ.P. 56(c). An affidavit is "a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath." *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir.1985) (quotations and citations omitted). Additionally, federal law allows an "unsworn declaration, certificate, verification, or statement, in writing of [a] person which is subscribed by him, as true under penalty of perjury, and dated" to have the same force and effect as an affidavit or other sworn statement. 28 U.S.C. § 1746. Section 1746 sets out form language for meeting its requirements: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." *Id.* § 1746(2).

A document in the proper form must also meet further requirements. Rule 56(e) of the Federal Rules of Civil Procedure ("Rule 56(e)") provides that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). "An affidavit that does not measure up to the standards of [Rule] 56(e) is subject to a motion to strike." *Noblett v. General Elec. Credit Corp.*, 400 F.2d 442, 445 (10th Cir.1968).

To be admissible, a document must be authenticated by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). Authentication may be made, for example, by the testimony of a witness with knowledge. Fed.R.Evid. 901(b)(1). A document is considered "self-authenticating" and does not need additional evidence to support its identity if it is a "declaration that satisfies 28 U.S.C. § 1746." Fed.R.Evid. 902 advisory com-

mittee's note (2000). Additionally, a document "accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments" is considered "self-authenticating." Fed.R.Evid. 902(8).

■ Plaintiff's Submission A is a document titled "Plaintiff Violet Lumoa's Response to Defendant United States Postal Service [sic] First Request for Production of Documents to Plaintiff." It provides a list of Defendant's discovery requests for the production of documents and a disposition for each, such as "Submitted" or "None." The document is signed only by Plaintiff's attorney. Defendant correctly points out that this is not an evidentiary document allowed under Rule 56. It is not a pleading, deposition, answer to an interrogatory, admission, or affidavit. As such, it will be stricken.

■ Plaintiff's Submission B consists of several handwritten statements by Robin M. Moore, Adrienne Maddox, Annettia Wattlington, and Brenda Cotten, all of whom were employed at the same location as Plaintiff. All of the statements are signed and include dates, although there is no indication of how these dates relate to the documents.[2] None are sworn, certified, or notarized, and none contain language similar to the form language of 28 U.S.C. § 1746. Because none of these statements are an affidavit or meet the standards of § 1746, they cannot be considered in a summary judgment disposition and will be stricken.

■ Plaintiff's Submission C, titled "EEO Investigative Report," includes a

case number and designates the "Complainant" as "Violet I. Luoma." The document is typed but includes handwritten numbers at the bottom of each page, probably meant to indicate page numbers, that begin with the number four on the first page up through and including number eleven on the last page. The document is signed by G. Dawn Ahearn, EEO Complaints Investigator, and is dated September 26, 2002. The document summarizes statements and testimony made by Plaintiff and other employees and also summarizes other exhibits apparently related to this case. The document is not sworn, certified, or notarized, and does not contain the form language of § 1746. Further, the document is not printed on letterhead, contains no insignia or logos of the Postal Service, and does not contain any information about G. Dawn Ahearn other than the job title appearing under her signature. Although it is unauthenticated, Defendant states that this document is "a summary from the EEO Investigative Report." (Def.'s Reply Mem. Support Mot. Strike at 2.) Defendant argues that it contains hearsay, is not based on personal knowledge, and is not in the proper form. It appears that none of the information in this document is admissible in evidence because much of it is Ms. Ahearn's hearsay summary of statements made by other people, and none of the information is based on personal knowledge. Further, it is neither an affidavit nor a qualifying substitute under § 1746. Therefore, the document does not meet the requirements of Rule 56(e) and will be stricken.

■ Finally, Plaintiff's Submission D is Plaintiff's EEO Investigative Affidavit.

---

**2.** For example, Robin M. Moore's statement includes "9/1/01 4:30 am" written on the top of the first page. The writing then proceeds to discuss the events of September 1, 2001, and other events. The writing, however, does not indicate if the date and time are a title for the document, the date of the writing, or some other reference. No date appears near the signature.

The document is signed by Plaintiff at the bottom of each page under the statement "I declare under penalty of perjury that the foregoing is true and correct." (Pl.'s Response Def.'s Summ. J. Mot. Pl.'s Submission D.) Each page is dated June 13, 2002, next to Plaintiff's signature. As a whole, the document meets the requirements of 28 U.S.C. § 1746. Thus, the document is in the proper form and is self-authenticating under Rule 902 of the Federal Rules of Evidence. It may be considered in support of Plaintiff's opposition to Defendant's summary judgment motion, to the extent it meets the other requirements of Rule 56(e).

■ Defendant argues that Plaintiff's Submission D contains statements not based on Plaintiff's personal knowledge. Specifically, Plaintiff makes several statements regarding her alleged harasser Richard Palumbo, another Postal Service employee, and his conduct with other employees. However, she states in her deposition that she had witnessed only a single event involving Palumbo, on September 1, 2001, which is the date of her injury. (Def.'s Mem. Support Mot. Summ. J. Ex. A [hereinafter, "Lumoa Dep."] at 19, 43.) Further, Plaintiff indicates in her deposition that she had no significant contact with Palumbo until the event on September 1, 2001. (*Id.* at 14.) These statements show that Plaintiff could not have first-hand knowledge of other incidents or altercations involving Palumbo. Any statements by Plaintiff referring to Palumbo's conduct with other employees do not meet the personal knowledge requirement of

Rule 56(e) and will be stricken from Submission D.

## B. Factual Background

The following facts are based on the remaining evidentiary record.

Plaintiff Violet Lumoa is a female and has been employed by the United States Postal Service as a mail processing clerk since January 1999. (Lumoa Dep. at 6–7.) Since March 2001, she has performed this work at a processing and distribution center on Pleasant Ridge Road in Greensboro, North Carolina (the "PDC"). (*Id.* at 7.) Until September 2001, Lumoa operated a delivery bar code sequence machine ("DBCS machine"), which scans outgoing mail and sequences it. (*Id.* at 8–9.) She currently holds this position, although she is on a limited-duty assignment due to a shoulder injury. (*Id.* at 10.)

On September 1, 2001, Plaintiff's shoulder was injured when she was pinned between a movable cart and a stationary machine. The incident was caused when Richard Palumbo moved a ladder against the movable cart, which pushed Plaintiff against the machine. (*Id.* at 12.) Palumbo was moving the ladder so he could retrieve mail that was stuck on Plaintiff's DBCS machine.[3] (*Id.*) Palumbo is one of several electronic technicians ("ETs") at the PDC, and his job duties include making electronic and mechanical repairs to mail processing equipment. (Martin Decl. ¶ 2.) He has been an ET with the Postal Service since at least September 1997. (Quincoses Decl. ¶ 4.) He is not a supervi-

---

3. Plaintiff alleges that Palumbo intentionally moved the ladder in this manner. Plaintiff says Palumbo saw her pinned between the two pieces of equipment, and she says another employee, Michelle Apple, screamed at him that he was "squishing" Plaintiff, but he did not move the ladder or back away. (Lumoa Dep. at 11–12.) Plaintiff also admits, however, that she was not paying full attention to Palumbo while he was moving the ladder. (*See id.* at 29.) She said nothing to him while he was on the ladder. (*Id.* at 32.) In any case, whether his actions were negligent or intentional is not relevant because, as explained below, Plaintiff has failed to make out a prima facie case of sex discrimination.

sor and has no supervisory authority over Plaintiff. (Lumoa Dep. at 18–19.)

The injury Plaintiff received during the incident on September 1, 2001, has had lasting effect. Lumoa had two surgeries and received therapy and medication. (*Id.* at 37–38.) As a result of her injury, she was out of work for a total of 14 months. (*Id.* at 36.) Plaintiff received workers' compensation payments from the Postal Service during the time she was unable to work, and the Postal Service covered all of her medical expenses related to this on-the-job injury. (*Id.* at 39–40.)

Plaintiff's complaint rests entirely on her treatment by Palumbo. In addition to this physical injury, Lumoa complains that Palumbo was "rude." In elaborating on this description, Lumoa states that Palumbo would often "[j]ust come over and ask ... what the problem is on the machine and just be irate that—you know, it's not a problem ... just rude, didn't want to really do his job to fix the machine." (*Id.* at 15.) She also reports that she considered it rude when he was "grouchy," but "[i]t might not be rude to someone else." (*Id.* at 16.) She reports that sometimes Palumbo, whom she describes as a large man, would "walk past you in a small area ... where he could touch you ... and he would be trying to squeeze by you instead of letting you move out of the way." (*Id.* at 15–16.) On the night of September 1, 2001, she states that Palumbo came to her machine "yelling" about mail trays being strewn about and other things being in his way. (*Id.* at 23–24.) However, Plaintiff admits that Palumbo never cursed at her, never said anything of a sexual nature to her, never said anything demeaning to her, never made physical contact with her, never made any obscene or rude gestures, and

she never witnessed him using profanity directed at women. (*Id.* at 16–17.)

Prior to September 1, 2001, Plaintiff had never reported Palumbo's behavior to her supervisor or to anyone else at the Postal Service. (*Id.* at 18.) Charles Franklin Martin, Palumbo's supervisor, was not aware of Palumbo's involvement in any other incident in which someone was physically injured. (Martin Decl. ¶ 5.) Palumbo has not been involved in other such incidents since the day of Plaintiff's injury. (Martin Decl. ¶ 8.) Prior to the day of Plaintiff's injury, Martin had received a complaint from Julie Bradford, a supervisor, that Palumbo had a "brash" and irritating personality. (*Id.* ¶ 4.) However, Martin was not aware of any violent, abusive, or harassing behavior by Palumbo. (*Id.* ¶ 5.)

## II. DISCUSSION

Lumoa brings a claim for sex discrimination based on a hostile work environment. Lumoa alleges the Postal Service caused her injury by allowing its employee Palumbo to create a work environment that was unsafe and hostile for female employees, and thus is liable to her under Title VII. The Postal Service in its Motion for Summary Judgment argues that it should prevail as a matter of law on Lumoa's claim because she has failed to make out a prima facie case of a hostile work environment.[4]

### A. Standard of Review

Summary judgment is appropriate when the pleadings and other submissions, viewed in the light most favorable to the plaintiff, show that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter

---

4. The Postal Service makes additional arguments that are only relevant to an affirmative defense. Because the court finds Plaintiff has failed to make out a prima facie case, those arguments will not be reached.

of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The basic question in a summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). A court "must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir.2004) (citing *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir.2002)). However, where "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (internal citations omitted).

The party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). If the nonmoving party fails to make a sufficient showing to establish an essential element of its case, summary judgment is proper because a "complete failure of proof" on an essential element "renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552. While the court "must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 958–59 (4th Cir.1996) (citing *Ballinger v. North Carolina Agric. Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir. 1987)).

### B. Sex Discrimination and Sexual Harassment

■ Title VII prohibits sex discrimination "with respect to [an individual's] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). A hostile or abusive work environment is actionable under Title VII if it is severe or pervasive enough to alter the terms, conditions, or privileges of employment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). To prevail on a hostile work environment claim, a plaintiff must show the following: (1) she was subjected to unwelcome conduct; (2) the alleged harasser engaged in this conduct "because of" her gender; (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create a hostile work environment; and (4) there is some basis to impute liability to the employer. *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 266 (4th Cir. 2001). Defendant does not challenge that Plaintiff has met her burden on the first prong of her claim.

■ To satisfy the second prong of a hostile work environment claim, a plaintiff must demonstrate that the alleged harasser engaged in the unwelcome conduct "because of" her sex. This does not require that a plaintiff show she was subjected to sexual advances or propositions, nor need she show the harassment was motivated by sexual desire. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). Rather, "[t]he critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (internal quotations omitted).

■ To satisfy the third prong of a claim, the conduct must be sufficiently severe or pervasive to alter the conditions of

employment. To be actionable, the conduct must be both objectively and subjectively offensive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). To be objectively offensive, the conduct must create "an environment that a reasonable person would find hostile or abusive," otherwise it lies "beyond Title VII's purview." *Id.* In deciding whether a reasonable person in the plaintiff's position would find the environment hostile or abusive, a court should consider "all of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ocheltree v. Scollon Prods., Inc.,* 335 F.3d 325, 333 (4th Cir. 2003) (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. at 371).

■ To satisfy the fourth prong of a claim, a plaintiff must allege enough facts to show why the employer should be held liable for the acts of its employee. In a situation where the alleged harasser is not a supervisor and has no authority over the plaintiff, the standard of liability is negligence. *Mikels v. City of Durham,* 183 F.3d 323, 332 (4th Cir.1999). To prove an employer's negligence in a hostile work environment claim, the plaintiff must show the employer "knew or should have known about the conduct and failed to stop it." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 759, 118 S.Ct. 2257, 2267, 141 L.Ed.2d 633 (1998). "Knowledge of work place misconduct may be imputed to an employer by circumstantial evidence if the conduct is shown to be sufficiently pervasive or repetitive so that a reasonable employer, intent on complying with Title VII, would be aware of the conduct." *Spicer v. Virginia Dep't of Corr.,* 66 F.3d 705, 710 (4th Cir.1995).

The Postal Service argues that it is entitled to summary judgment because Lumoa has not put forth sufficient evidence to show that her injury was inflicted "because of" her gender, that a hostile work environment existed at the PDC, or that the Postal Service was aware of any alleged harassment. The court finds Plaintiff has failed to make out the second, third, and fourth prongs of a hostile work environment claim.

■ First, Lumoa has failed to put in evidence sufficient to support an inference that her injury resulted because she is female. It appears from the record that Richard Palumbo is a rude and hostile person, but it does not appear that he directs this behavior only at women. Plaintiff states that Palumbo was "usually rude when he would come over to the machines" but does not indicate that this rudeness arose only when women, rather than men, were operating the DBCS machines. (Lumoa Dep. at 14.) She says he would "just be irate" or was "just rude," but she does not indicate any object of his negative behavior. (*Id.* at 15.) Plaintiff also states that Palumbo would "fling things around" and would "push [items] out of the way ... instead of moving them," but he never tried to hit anyone with any equipment or otherwise directed this aggression at anyone in particular. (*Id.* at 23.) Michelle Apple, Lumoa's partner on the DBCS machine on the night of September 1, describes Palumbo's behavior earlier during the shift as "angry and slamming things around on [another] machine." (Pl.'s Resp. Def.'s Summ. J. Mot. Pl.'s Submission B.) Again, this description falls short of indicating that he was angry at a female employee or was directing his hostile behavior at any specific person or group of people. Palumbo has only been involved in a single incident causing physical injury to another employee. This iso-

lated event cannot support a conclusion that he injures or attempts to injure only female co-workers.

■ Second, Plaintiff has failed to show that Palumbo's behavior was sufficiently severe or pervasive to alter the conditions of her employment. She says that prior to September 1, 2001, she had never really worked with Palumbo. (Lumoa Dep. at 14.) When he was required to service a DBCS machine on which she was working, she would usually "step away and let him just do his job." (*Id.*) She further states that she did not really think of his behavior as a problem and that she regularly avoided him by stepping away. (*Id.*) Although Palumbo may be a hostile person, there is nothing in the record to indicate that the behavior of this individual was so frequent or severe that a reasonable person in Plaintiff's position would consider the work environment hostile or abusive. Nor does the record show that Palumbo's behavior had any effect on Plaintiff's ability to perform her work. There is no showing that his rudeness rendered her unable to fulfill her job duties. Even after her injury, Plaintiff remains in the position of mail processing clerk.

■ Finally, Plaintiff has not shown that the Postal Service knew or should have known of Palumbo's conduct. The injury she sustained on September 1, 2001, occurred during the first and only such incident in which Palumbo had been involved. Palumbo's supervisor, Charles Martin, had received a prior complaint about Palumbo's brash and irritating personality, but this type of information is irrelevant to his propensity for causing on-the-job injury and does not make such an incident foreseeable. Further, Martin says he had no information about Palumbo's violent, harassing, or abusive behavior toward anyone working at the PDC. (Martin Decl. ¶ 5.) Martin's information about

Palumbo is not enough to impute knowledge of more egregious behavior, such as sexual harassment, to the Postal Service. The Postal Service did not know and could not have known that Lumoa's injury would occur.

In summary, Plaintiff has failed to show she was a victim of sex discrimination. She has not adduced sufficient evidence to show that Palumbo's rudeness toward her or his involvement in the injury-causing incident was "because of" her sex, she has failed to show the work environment at the PDC was objectively hostile or abusive enough to alter the conditions of her employment, and she has failed to show the Postal Service knew or should have known of any hostile or abusive behavior by one of its employees.

## III. CONCLUSION

For the reasons set forth herein, the court will grant Defendant's Motion for Summary Judgment and its Motion to Strike.

A judgment and order in accordance with this memorandum opinion shall be filed contemporaneously herewith.