**COVENANT MEDIA OF SOUTH CAROLINA, L.L.C.,**
Plaintiff,

v.

**CITY OF NORTH CHARLESTON, SOUTH CAROLINA,**
Defendant.

No. CIVA 2:05–01394–PMD.

United States District Court,
D. South Carolina,
Charleston Division.

July 12, 2006.

Gene McCain Connell, Jr, Kelaher Connell and Connor, Surfside Beach, SC, Lead Attorney, Attorney to be Noticed, Edward Adam Webb, Webb Law Group, Atlanta, GA, Attorney to be Noticed, for Covenant Media of South Carolina LLC, Plaintiff.

Derk Bleckman Kekkert Van Raalte, IV, Brady Hair Law Offices, N Charleston, SC, Lead Attorney, Attorney to be Noticed, Randal R Morrison, Sabine and Morrison, San Diego, CA US, Lead Attorney, Attorney to be Noticed, Sandra Jane Senn, Sandra Jane Senn Law Office, Charleston, SC US, Lead Attorney, Attorney to be Noticed, Stephanie P McDonald, Senn McDonald and Leinbach LLC, Charleston, SC, Lead Attorney, Attorney to be Noticed, for City of North Charleston South Carolina, Defendant.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court on Plaintiff Covenant Media of South Carolina, L.L.C.'s ("Covenant") Motion for Partial Summary Judgment and Defendant City of North Charleston's ("City") Motion for Summary Judgment. The parties filed appropriate responses and replies to these motions. With the permission of the court, Covenant also filed a Surreply to the City's Reply Memorandum regarding the City's motion. After considering all pending motions and memorandum, the court grants Defendant City's motion for summary judgment and dismisses Plaintiff Covenant's motion for partial summary judgment.

### BACKGROUND

The facts of this case, either uncontested or considered in the light most favorable to Covenant, are as follows:

Prior to October of 2005, the City had in force sign regulations which required that "[n]o ... sign requiring a permit ... shall be erected, added to or structurally altered ... until the required permits have been issued." Prior Code § 7–2. A billboard or other off-premises sign "identifying or advertising a business, person, or activity, or goods, products, services, or facilities not located on the premises where the sign is installed or directing persons to a different location from where the sign is installed" were considered a "sign requiring a permit." Prior Code §§ 8–2, 8–6. As such, the City purported to regulate the posting of signs based on their content. Sections of these regulations were overly-broad and gave the City impermissibly wide discretion to deny or grant billboard permits. The sign regulations also had several permissible content-neutral requirements for billboards. For example, the regulations required that billboards be at least 1,000 feet from the next nearest billboard, set back at least ten feet from all property lines adjacent to a public right of way, and no more than 772 square feet in size. Prior Code §§ 8–6(c)(3)–(6). In addition to the sign regulations, the City put in effect in 1999 a moratorium on the issuance of billboard permits. The City Council, by resolution, had extended this moratorium until June of 2006.

On December 1, 2004, Covenant submitted to the authorized City official an appli-

cation for a permit to post a new off-premises billboard at 2161 Ashley Phosphate Road. Many months later, the City had failed to respond to Covenant's request. It is contested whether the City refused to process the application or the application was merely lost.

On May 12, 2005, Covenant filed this action alleging that the City's sign regulations and billboard moratorium were content-based prior restraints that prevented Covenant from engaging in protected speech activities in violation of the First Amendment. Covenant requested both injunctive relief and damages under section 1983.

On September 15, 2005, the City Council had the first reading of a proposed repeal of the *existing* sign ordinance and the adoption of a new sign law ("Amended Ordinance") providing for a content-neutral total ban of all new billboards. On September 16, 2005, the Post & Courier, the Charleston area's major newspaper, ran a story regarding the City's proposed change in its sign ordinance. On September 28, 2005, the City published notice in the Post & Courier of the public hearing to be held during which the Amended Ordinance would be considered for adoption.

On September 30, 2005, Covenant submitted to the City twenty-five additional applications for billboard permits. These applications were marked as "received" by the City on October 3, 2005.

On October 13, 2005, the City Council approved by unanimous vote the ratification of the Amended Ordinance. Under the Amended Ordinance, which took effect immediately upon adoption, all new billboards are completely and permanently prohibited. On October 14, 2005, the City sent a letter to Covenant denying its original application, stating that the application was incomplete and noncomplying under both the prior and the current version of the ordinance. Since the adoption of the

Amended Ordinance, the moratorium and the original sign regulations have not been in effect. Covenant does not allege that the Amended Ordinance is unconstitutional.

On April 20, 2006, the City moved for summary judgement as to all of Covenant's claims, and Covenant moved for partial summary judgment.

### STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored proce-

dural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

## ANALYSIS

The City argues for summary judgment, claiming that, as a matter of law, (1) all claims for relief are moot due to the adoption of the new ordinance and (2) Covenant has no standing to assert its claims because all of its applications were denied for constitutional reasons. Covenant denies both of these claims and also asserts that, even if it does fail to meet the traditional requirements for standing, (3) it has standing to facially challenge the prior sign regulations under the overbreadth doctrine. The court considers each of these arguments in turn:

### (1) Mootness

■■■ The City argues that the passage of the Amended Ordinance has made all of Covenant's asserted claims moot. A case is moot where the cause of action is no longer live, or where the parties no longer hold a personal stake in the outcome. *Henschen v. City of Houston, Tex.*, 959 F.2d 584, 587 (5th Cir.1992) (citing *Matter of Commonwealth Oil Ref. Co.*, 805 F.2d 1175, 1181 (5th Cir.1986), *cert. denied*, 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987)). The court agrees that the adoption of the Amended Ordinance rendered moot Covenant's request for immediate injunctive relief; however, the claims for money damages did not become moot. If Covenant's rights were violated by the denial of their applications for billboard permits, and that denial caused actual damage, then Covenant has stated a live claim under § 1983. *Id.; see also Boulder Sign v. Boulder City NV.*, 382 F.Supp.2d at 1190 (D.Nev.2005) (finding that adoption of amended sign ordinance mooted all of plaintiff's claims for injunctive relief, but leaving open the damages issue). The

court therefore dismisses as moot Covenant's claims for injunctive relief, and considers whether Covenant has standing to assert a claim for damages under § 1983.

### (2) Standing to Assert Damages Claims

■■■ The Supreme Court has declared that "[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Art. III. *Id.* The case-or-controversy requirement thus plays a critical role, and "Article III standing enforces the Constitution's case-or-controversy requirement." *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11, 124 S.Ct. 2301, 2308, 159 L.Ed.2d 98 (2004). The "core component" of the requirement that a litigant have standing to invoke the authority of a federal court "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The requisite elements of this "core component derived directly from the Constitution" are familiar: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *see also DaimlerChrysler Corp. v. Cuno*, —— U.S. ——, ——, 126 S.Ct. 1854, 1861, 164 L.Ed.2d 589, 2006 WL 1310731, *7 (2006).

Defendant City does not contest that its prior sign ordinance was unconstitutional. The City contends, however, that when the unconstitutional provisions are severed

from the remainder of the code, Covenant's proposed signs still violated the prior ordinance's content-neutral, constitutional requirements. The City asserts that because Covenant's sign applications would have been denied under these requirements, Covenant fails the "traceability" and "redressability" standing doctrines, and has therefore suffered no compensable constitutional injury. *See Boulder Sign Co., L.L.C. v. City of Boulder City, Nev.,* 2006 WL 1294390, *5 (D.Nev.) (D.Nev., 2006) (holding that the City's sign code still contained height, width, and sign face area restrictions which Boulder Sign's proposed signs exceeded; as such, because Boulder Sign could not have erected its proposed signs, the sign code's unconstitutional provisions caused no injury to Boulder Sign); *Valley Outdoor, Inc. v. County of Riverside,* 337 F.3d 1111, 1114–15 (9th Cir.2003) ("no damages are warranted because the subject billboards were 'independently' illegal under the applicable ordinance's content-neutral zoning, size, and height provisions."); *see also Prime Media, Inc. v. City of Brentwood,* 398 F.3d 814, 824 (6th Cir.2005) ("In view of Brentwood's permissible rejection of the application on size and height grounds, we agree that Prime Media's claim for actual or nominal damages is flawed as a matter of law."); *Harp Advertising Illinois, Inc. v. Village of Chicago Ridge,* 9 F.3d 1290, 1291 (7th Cir.1993) (holding plaintiff lacked standing to allege constitutional injury where it proposed to build a sign that exceeded ordinance's constitutionally-enforceable restrictions on dimension); *Warth,* 422 U.S. 490, 95 S.Ct. 2197 (1975) (holding that plaintiffs challenging zoning practices of suburb that prevented construction of multifamily dwellings and low-income housing had no standing where they could not demonstrate that appropriate housing would be constructed without the exclusionary zoning ordinances). The court agrees that if the applications were deficient under the prior ordinance's content-neutral requirements, then Covenant suffered no redressable injury by the City's denial of the applications and therefore lacks standing to challenge the unconstitutional provisions of the prior ordinance.

The City asserts the following constitutional, content-neutral reasons for denying Covenant's applications: (A) the single application filed December 1, 2005, would have been denied because it did not comport with the prior ordinance's separation requirements; and (B) the applications submitted on September 30, 2005 and received by the City on October 3, 2005, were submitted while the new ordinance was in the process of being passed and therefore were properly denied under the pending ordinance doctrine.[1]

**(A) The application for 2161 Ashley Phosphate Road, filed December 1, 2004, violated the prior ordinance's separation requirements.**

The City claims that the proposed billboard at 2161 Ashley Phosphate Road was in violation of the content-neutral requirement in effect at the time of application that new signs be at least 1,000 feet away from the nearest pre-existing sign.[2] In support of this allegation, the City submitted the affidavit of William Gore, the Zoning Administrator for the City. Mr. Gore attested that the proposed sign at 2161 Ashley Phosphate Road "appears likely to

---

1. The City also asserts that all of the applications were incomplete and therefore could not be processed. Because the court decides this case on other grounds, it does not reach this argument.

2. It is uncontested that an ordinance regulating the distances between billboards is a content-neutral, constitutional regulation.

be impermissibly close to certain property lines" and "appears to be closer than 1,000' to a previously established billboard," both in violation of the sign ordinance in effect at the time of the application. (Dkt No. 72, Gore Declaration, ¶ 17.)

In Response to these allegations, Covenant submitted the affidavit of its president, Mr. Morgan Hudgens, who testified, "I am aware that the sign applied for was located in an otherwise approved 'billboard plaza' as defined by the City's regulation. I am also aware that the applied-for sign is more than 1000 feet from any other existing 'billboard,' did not exceed 772 square feet of display area, and otherwise complied with all lawful restrictions imposed by the existing sign regulations at the time Mr. Power submitted the completed sign application package to the City," (Dkt No. 14, Hudgens Declaration, ¶ 13.) Covenant argues that Mr. Gore's declaration that the sign "appears likely" to be too close to property lines and "appears" to be closer than 1,000 feet to another billboard is "simply insufficient" to support a motion for summary judgment.

In its Reply to Covenant's Response, the City submitted new evidence that refuted Mr. Morgan's testimony. First, the City submitted the Third Declaration of Bill Gore (Dkt No. 77) which stated:

4) Planning Department staff, at my request, on two separate occasions measured between the proposed new sign location as shown on the site plan and the closest pre-existing billboard. Using the methodology of the ordinance in effect at the time of the initial application (as closely as possible given traffic and vehicular safety concerns) the distance between these two points was measures as being less than eight hundred (800) feet. This measurement was taken using a measurement "wheel," as is the standard practice of this department.

5) In addition to the "wheel" measurement referred to above, I have also performed a measurement of the type described in the prior ordinance using computerized orthophotos and computerized measuring tools. I utilized this technique at various times in the normal course of conducting the business of my Department. Utilizing this method the distance between the proposed sign and the pre-existing billboard is approximately 726 feet.

6) Finally, I am aware that a survey by a registered land surveyor with Davis and Floyd was recently conducted between these points using the methodology described in the prior ordinance and revealed a distance of 702.26 feet. A copy of this survey report is attached hereto as Exhibit A.

\* \* \* \* \* \*

8) Given the fact that the measurements provided by the wheel and the computer were well below the 1000' minimum and the existence of a survey showing the same, it is my opinion that the proposed location is less than 1000' from a preexisting sign and that any inherent margin of error in either of the measurement techniques discussed above would not be sufficient to alter this result.

The City also submitted the declaration of Mary Cohen, the City employee in the Department of Planning and Management responsible for taking measurements to establish distances between points for use by the City's Zoning Administrator, Mr. Gore. Ms. Cohen testified that "[u]sing the methodology of the ordinance in effect at the time of the initial application the distance between [the proposed billboard and the preexisting billboard] was less than eight hundred (800) feet." (Dkt No. 77–2, Cohen Declaration, ¶ 5.)

Rule 56(c) of the Federal Rules of Civil Procedure mandates that "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," must show a disputed factual issue exists in the case. Fed.R.Civ.P. 56(c). "This evidence must be based on personal knowledge and must set forth admissible facts." *Reynolds and Reynolds Co. v. Hardee*, 932 F.Supp. 149, 153 (E.D.Va.1996). "To be admissible, a document must be authenticated by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Lumoa v. Potter*, 351 F.Supp.2d 426, 430–31 (M.D.N.C.2004) (quoting Fed. R.Evid. 901(a)). "It is not enough for a witness to tell all [he] knows; [he] must know all [he] tells." *Harrison v. Principi*, 2006 WL 1581807, *7 (D.S.C.) (June 6, 2006) (citing *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir.2001)). In the instant matter, Mr. Hudgen's self-serving and conclusory declaration that he "was aware" that the proposed sign was more than 1,000 feet from any other existing "billboard," is insufficient to constitute a genuine issue of fact. In contrast, the testimony of Mr. Gore and Ms. Cohen is clearly capable of supporting a motion for summary judgment. They both testify under oath as to the measurements that they performed; such information is clearly within their knowledge.

■ The court granted Covenant's request to respond to the City's Reply brief; as such, Covenant has had an opportunity to submit evidence contradicting the City's evidence. In its Surreply, however, Covenant did not contest the validity of Mr. Gore or Ms. Cohen's measurements. The court therefore finds that there is no genuine issue of material fact that the proposed sign at 2161 Phosphate Road did not comport with the content-neutral requirements of the Ordinance in effect at the time of the filing of the application. Because the application would have been denied even absent the unconstitutional provisions of the sign ordinance, Covenant has no stand-

ing to challenge the constitutionality of the denial of this application.

**(B) The applications submitted on September 30, 2005, were properly denied under the pending ordinance doctrine.**

The South Carolina Supreme Court has approved the "pending ordinance doctrine" as a basis for a municipality to refuse to issue a building permit when such proposed use is repugnant to a pending and later enacted zoning ordinance. *Stratos v. Town of Ravenel*, 297 S.C. 309, 311, 376 S.E.2d 783, 785 (S.C.App.1989); *Sherman v. Reavis*, 273 S.C. 542, 257 S.E.2d 735 (1979). It is uncontested that all of Covenant's billboard permit applications would be denied under the Amended Ordinance. The City asserts that because the pending ordinance doctrine sanctions the denial of the twenty-five applications filed after the commencement of the amendment process, regardless of the unconstitutional provisions of the prior regulations, Covenant has no standing to challenge the constitutionality of the denial of these applications.

Covenant argues that the City's reliance on the pending ordinance doctrine is mislaid. Covenant asserts that the pending ordinance doctrine only bars applications filed during the pending change in an ordinance if filed with actual knowledge of the impending zoning change. Covenant claims to have had no knowledge that the City was contemplating an amendment to its sign regulations, and therefore asserts that its later-filed applications are not barred.

In response to Covenant's claim that it had no knowledge of the pending change in the sign ordinance, the City submitted in its reply the affidavit of Derk Van Raalte, Deputy City Attorney for the City. Mr. Van Raalte asserted that the City, in response to a request for admission # 13,

"The City has considered revisions to its sign regulations since the filing of the above captioned-litigation," answered "Admit." Mr. Van Raalte testified that the City gave this admission to Covenant prior to the filing of the additional sign applications. As such, and also from the local newspaper's publication regarding the pending change and the public hearing, the City claimed that Covenant did have actual and constructive knowledge of the pending change in the sign ordinance. Covenant, after the court granted leave to file a Surreply, submitted further evidence that it had no actual knowledge of the City's plan to change the prior sign ordinance.

 Contrary to Covenant's assertion, an applicant's actual knowledge of the pending change is not required for the pending ordinance doctrine to bar the issuance of a permit. Under the pending ordinance doctrine, courts have recognized that,

> it would be utterly illogical to hold that, after a zoning commission had prepared a comprehensive zoning ordinance or an amendment thereto, which was on file and open to public inspection and upon which public hearings had been held, and while the ordinance was under consideration, any person could by merely filing an application compel the municipality to issue a permit which would allow him to establish a use which he either knew *or could have known* would be forbidden by the proposed ordinance, and by so doing nullify the entire work of the municipality in endeavoring to carry out the purpose for which the zoning law was enacted.

*Sherman,* 273 S.C. at 546, 257 S.E.2d 735. Accordingly, the proper inquiry is not whether Covenant had actual knowledge of the pending change, but whether the City had begun the statutory procedure prescribed for amending the ordinance such that the amendment can be considered "pending" at the time the application is filed.

The South Carolina Supreme Court carefully delineated that "[a]n ordinance is legally pending when the governing body has resolved to consider a particular scheme of rezoning and has advertised to the public its intention to hold public hearings on the rezoning." *Sherman,* 257 S.E.2d at 737. In *Sherman* and the cases it cites, the particular rezoning proposal under consideration had already been recommended in detail to the city council by its planning staff and thus had reached "an advanced stage" of the statutory procedure prescribed for rezoning. *Id.* at 736. Where, by contrast, a county council's purported generalized interest in rezoning had not even reached the first statutory step, *i.e.,* the referral of the matter for full consideration to the county zoning and planning commission, the Fourth Circuit, interpreting South Carolina law, held that the pending ordinance doctrine could not bar the acceptance of the application. *Scott v. Greenville County,* 716 F.2d 1409, 1419, n. 10 (4th Cir.1983). In *Scott,* the Fourth Circuit found notable that the case authority from Pennsylvania upon which the South Carolina Supreme Court based its adoption of the "pending ordinance" doctrine flatly rejected the view that an ordinance could be considered pending as of the time the governing body first announced an intention to consider rezoning and refers the matter to its zoning commission. *Id.* (citing *Casey v. Zoning Hearing Board of Warwick Township,* 459 Pa. 219, 328 A.2d 464, 467 (1974)). The application of the pending ordinance doctrine therefore depends upon whether the applications were filed before or after the City had properly (1) resolved to consider amending the sign ordinance and (2) advertised to the public its intention to hold public hearings on the amendment.

In this case, the following sequence of events is uncontested: The City Council had the first reading of a proposed repeal of the existing sign ordinance and the adoption of a new sign law providing for a content-neutral total ban of all new billboards on September 15, 2005. On September 28, 2005, the City published notice in the Post & Courier of upcoming public hearing in which the City Council would vote on the proposed adoption of the Amended Ordinance.[3] On September 30, 2005, Covenant submitted to the City twenty-five additional applications for billboard permits.[4] These applications were marked as "received" by the City on October 3, 2005. On October 13, 2005, the City Council approved by unanimous vote the ratification of Amended Ordinance.

■ Because Covenant submitted the applications two days *after* the City had published timely and adequate notice of its intention to hold a public hearing to amend the existing sign ordinance, the pending ordinance doctrine bars acceptance of those applications, regardless of whether Covenant had actual knowledge of the proposed amendments.[5] The court therefore finds that these applications would have been denied regardless of the unconstitutional provisions of the City's prior sign ordinance. Covenant therefore has no standing to challenge the unconstitutional provisions of the prior ordinance, as those provisions caused no injury to Covenant.

**(C) Overbreadth Doctrine**

■ Covenant argues that, even if it can not fulfill the general requirements for standing, it has standing to challenge the prior ordinance under the First Amendment "overbreadth doctrine." The Supreme Court has stated that "[i]t has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the

---

3. In South Carolina, the procedure for enacting or amending zoning regulations is codified at South Carolina Code section 6–29–760. This provision of the Code states,

> Before enacting or amending any zoning regulations or maps, the governing authority or the planning commission, if authorized by the governing authority, shall hold a public hearing on it, which must be advertised and conducted according to lawfully prescribed procedures. If no established procedures exist, then at least fifteen days' notice of the time and place of the public hearing must be given in a newspaper of general circulation in the municipality or county.

S.C.Code Ann. § 6–29–760 (2004). The court finds that the City's publication of notice in the Post & Courier fifteen days before the October 13 meeting in which the Amended Ordinance was finally adopted was adequate and timely.

4. These twenty-five applications were sent to the City accompanied by a letter from Covenant's attorney, Mr. Franklin Lemond. The letter, which is attached as an exhibit to the City's Reply brief, is dated September 30,

2005 and marked as "received" by the City's attorney on October 3, 2005. In its Surreply, Covenant did not dispute that the letter and applications were sent on September 30; Covenant only asserts that the applications were submitted "in September of 2005." (Pl. Surreply at 2.) As such, considering the evidence in the light most favorable to Covenant, the court finds that September 30, 2005, is the earliest date the applications could have been submitted.

5. Covenant also argues that because notice was not published for the hearing in which the City performed the first reading of the proposed change, the statutory notice requirements were not followed and the pending ordinance doctrine does not apply. The South Carolina Code does not require that the City publish newspaper notice of the meeting in which the first reading is conducted. See S.C.Code Ann. § 6–29–760 (2004); see also Brown v. County of Charleston, 303 S.C. 245, 399 S.E.2d 784 (S.C.App.1990). Accordingly, the City performed the proper notice procedure in amending the sign ordinance so as to warrant the application of the pending ordinance doctrine.

exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma,* 413 U.S. 601, 611, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973) (citing *Herndon v. Lowry,* 301 U.S. 242, 258, 57 S.Ct. 732, 739, 81 L.Ed. 1066 (1937); *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960)). As a corollary, the Supreme Court altered its traditional rules of standing to permit—in a limited First Amendment area—"attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Broadrick,* 413 U.S. at 612, 93 S.Ct. at 2916. Under this overbreadth doctrine, "[l]itigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* Such a departure from traditional standing requirements is considered necessary to prevent the chilling effect an overly broad statute may have on one's right to free speech.

▪ Covenant's claim that the overbreadth doctrine saves it from having to satisfy standing requirements is without merit. The justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context. *Bates v. State Bar of Arizona,* 433 U.S. 350, 380–381, 97 S.Ct. 2691, 2707—2708, 53 L.Ed.2d 810 (1977). The Supreme Court has recognized that there are "common-sense differences" between commercial speech and other varieties. *Id.* "Since advertising is linked to commercial well-being, it seems unlikely that such speech is particularly susceptible to being crushed

by overbroad regulation." *Id.* Further, the justification for the application of the overbreadth analysis disappears entirely when, as in this case, the challenged statute is no longer in effect. The overbreadth doctrine has been described by the Supreme Court as "strong medicine," which "has been employed ... sparingly and only as a last resort," *Broadrick v. Oklahoma,* 413 U.S. at 613, 93 S.Ct. at 2916; accordingly, the court declines to apply it to allow a challenge of a now-defunct regulation of commercial speech.

Both Covenant's original sign application and its twenty-five later-filed applications would have been denied even if the unconstitutional provisions of the City's prior regulations had been stricken. In this context, the overbreadth doctrine does not relieve Covenant of its obligation to satisfy the traceability and redressability requirements for standing. As such, Covenant has not shown that its injury is fairly traceable to the unconstitutional provisions of the City's prior ordinance, nor has it shown that its injury is likely to be redressed by the requested relief; therefore, Covenant has no standing to challenge the City's prior ordinance. Accordingly, all of Covenant's claims against the City must be dismissed, and Covenant's pending motion must be dismissed as moot.

### CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendant City of North Charleston's Motion for Summary Judgment is **GRANTED** as to all claims and Plaintiff Covenant Media of South Carolina, L.L.C.'s Motion for Partial Summary Judgment is **DISMISSED**.

**AND IT IS SO ORDERED.**